[Cite as *Jergens v. Jergens*, 2026-Ohio-2852.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| ANDREW JERGENS | : | |
| | : | C.A. No. 30673 |
| Appellee | : | |
| | : | Trial Court Case Nos. 2023 CV 2052; |
| v. | : | 2025 CV 716; 2025 CV 1887 |
| | : | |
| BRIAN JERGENS TRUSTEE AND REP | : | (Civil Appeal from Common Pleas |
| OF ESTATE OF WILLIAM P ET AL. | : | Court) |
| | : | |
| Appellants | : | **FINAL JUDGMENT ENTRY &** |
| | | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 24, 2026, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

AUGUST T. JANSZEN, Attorney for Appellants
ANTHONY J. HORNBACH and BENJAMIN S. SANDLIN, Attorneys for Appellee

HANSEMAN, J.

**{¶ 1}** Defendant-appellants, John Stachler, Gregg Devilbiss, and Robert Dix, appeal from the Montgomery County Common Pleas Court's judgment granting plaintiff-appellee's motion to compel discovery and determining that appellants' assertions of attorney-client and work product privileged materials had been waived. For the reasons stated in this opinion, the judgment is reversed.

## I. Facts and Course of Proceedings

**{¶ 2}** William P. Jergens ("Bill") established and owned the businesses of R.B. Jergens Contractors, Inc. ("RBJ"), and 309 Holdings, LLC ("309"). His sons Andrew Jergens ("Andrew") and Brian Jergens ("Brian") were five percent non-managing members of 309, and Andrew held a minority interest in RBJ. For years, if not decades, Bill consulted with John Stachler, his attorney, and Gregg Devilbiss, his financial advisor and accountant. Robert Dix is the current president of RBJ.

**{¶ 3}** In April 2023, Andrew filed his complaint in Montgomery County C.P. No. 2023 CV 2052, alleging numerous claims for relief against Bill, RBJ and 309. The complaint asserted that, for years, Bill had wrongfully misappropriated the corporate assets of RBJ and 309. Stachler entered a notice of appearance as counsel for Bill, RBJ, and 309 in the suit.

**{¶ 4}** Bill passed away in December 2023. Prior to his death, Bill created the William P. Jergens Third Amended and Restated Revocable Trust ("the trust"). Bill's son Brian was

named trustee. The trust designated Stachler, Devilbiss, and Dix, Bill's professional business trust advisors ("BTA"), to aid Brian as trustee.

{¶ 5} In February 2025, Andrew filed a second action in Warren County, which was transferred to Montgomery County and designated Montgomery County C.P. No. 2025 CV 716. In his second action, Andrew alleged claims against Brian both as representative of Bill's estate and as trustee of the trust. On February 21, 2025, Andrew filed his first amended complaint adding additional defendants: Stachler, Dix, and Devilbiss (collectively, "the BTAs"). Setting forth numerous claims, Andrew alleged that the trust, Brian, and/or the BTAs conspired to tortiously interfere with his business relations involving RBJ and 309. Andrew also alleged that the trust, the BTAs, and/or Brian transferred interests and attempted a sham merger transaction involving RBJ and 309.

{¶ 6} The BTAs retained counsel and filed a motion to dismiss and motion for sanctions on April 4, 2025. According to numerous motions filed, Stachler remained lead counsel for RBJ and 309 in Case No. 2023 CV 2052.

{¶ 7} On April 9, 2025, the BTAs filed a motion to stay discovery pending the outcome of the motion to dismiss and motion for sanctions. In the motion to stay discovery, the BTAs asserted, in part, that "[a] decision on the pending motion [to dismiss] will establish not only the scope of discovery (if any) but the parameters of various discovery matters and disputes, including the attorney-client privilege and work product doctrine." Case No. 2025 CV 716, Motion to Stay Discovery, p. 2. The trial court did not issue a decision regarding this motion.

{¶ 8} On April 17, 2025, Andrew served his first discovery requests on the BTAs, which consisted of interrogatories, requests for admission, and a request for production of documents. Each BTA responded to each request for admission as follows:

RESPONSE: Objection. This Request for Admission seeks information that is

3

protected by discovery by the Attorney-Client Privilege, the Work Product Doctrine, and/or Civil Rule 26. This Request for Admission is also objectionable because this discovery is subject to a pending Motion to Stay Discovery, filed prior to the service of this discovery, which remains pending for adjudication. Answering in part over the stated objections and without waiving the same, Defendant will seasonably supplement his response to this Request for Admission upon the adjudication of Defendants' Motion to Stay Discovery.

{¶ 9} The BTAs did not respond to the request for documents or interrogatories and did not provide a privilege log. In email or telephone communications, the BTAs communicated that responses were impossible due to attorney-client privilege and work product.

{¶ 10} On July 16, 2025, Andrew moved to compel discovery against the BTAs, requesting, in part, that the court determine that the BTAs had "waived all objections" to his first set of interrogatories and requests for production of documents. On July 28, 2025, the BTAs moved for a protective order, again seeking a stay of discovery until the pending motions before the court were determined. In their motion for a protective order, the BTAs stated, among other things:

[U]ntil such time as the Court rules on the pending motions, there are numerous unresolved discovery, attorney-client privilege, and work product issues, which will need to be addressed . . . . Presently, Plaintiffs are seeking to compel admissions, information, and document production, *from the lead trial counsel for the Company* (Mr. Stachler), in his individual capacity. . . . [U]nless and until this Court decides the pending motions, every

4

correspondence between counsel is now evidence and an admission by a party opponent. Plaintiff's counsel continues to contact Mr. Stachler, in his capacity as trial counsel for the Company, even though Mr. Stachler is now a party represented by counsel. Presumably, the parties and their future, not-yet-retained trial counsel of record will need to retake depositions and file additional discovery motions, seeking to protect attorney-client privilege, work product, and other documents and information protected by Civ.R. 26. These issues are merely the proverbial "tip of the iceberg" in sorting through the procedural, discovery, and evidentiary issues arising in a case where the trial attorneys of record become parties to the case in which they represented originally clients for more than two years.

Case No. 2023 CV 2052, Motion for Protective Order, p. 3.

{¶ 11} Two days later, on July 30, 2025, the BTAs filed a brief in opposition to Andrew's motion to compel and renewed their motion for a protective order. In their renewed motion, the BTAs stated:

Plaintiff's discovery requests improperly seek materials protected from discovery by the Attorney-Client Privilege and the Work Product Doctrine, and the discovery relates to legally unsupported and unprecedented theories of third party liability. More specifically, Plaintiff has sued the legal, business, and accounting professionals of another party in this litigation (the Trust), joining the lead trial counsel of yet another party (R.B. Jergens) and the entire professional advisory team for the Trust. Even ignoring the lack of good grounds to support such claims against the Professional Advisors, the documents and information are within the personal possession of the legal,

5

financial, and business advisors (as the attorney, agents, and advisors for the Trust in corporate, contractual, and other legal matters) are not discoverable directly from the Professional Advisors.

. . .

In terms of the discovery issues, literally all of Plaintiff's discovery requests raise issues of Attorney-Client Privilege and Work Product Doctrine. As just a few examples, in Request for Admission Nos. 1 through 5, Plaintiff seeks admissions from Attorney John Stachler, relative to the corporate entities and transactions involved in the *third* lawsuit, *R.B. Jergens, Inc. v. Andrew Jergens*, Montgomery County C.P. No. 2025 CV 011887. In Request for Admission Nos. 5 and 6, Plaintiff requests that Attorney John Stachler, as the legal advisor for the Trust, disclose his legal advice to the Trust (if any). Request for Admission No. 7 directly requests that Attorney John Stachler disclose the subject of his communications with his client. Likewise, the Document Requests explicitly request that Attorney John Stachler, in his individual capacity, produce his client's files, documents, and information. Interrogatories Nos. 7-9 seek the full disclosure of attorney-client information, including a detailed description of meetings and the advice rendered. Indeed, Plaintiff explicitly demands information relative to legal advice by Mr. Stachler to R.B. Jergens. *See* Interrogatories Nos. 10, 12, 13, 16, and 17. Plaintiff explicitly asks for "[a]ll documents relating to communications concerning or relating to" RBJ and 309 Holdings, relative to their corporate transactions. *See* Document Requests Nos. 4-16.

6

Case No. 2023 CV 2052, Opposition to Motion to Compel Discovery and Renewed Motion for Protective Order, p. 5, 7-8.[1]

{¶ 12} The trial court scheduled Andrew's motion to compel and the BTAs' motion for a protective order for an oral argument on September 9, 2025. Presumably because the motions were scheduled for oral argument, the BTAs did not present evidence or witness testimony to the court. At the conclusion of the argument, the BTAs did not request an additional hearing to present evidence or request an in camera inspection. Likewise, the court did not ask questions regarding specific documents or evidence that the BTAs claimed were privileged and did not schedule an in camera inspection or further evidentiary hearing. Therefore, the trial court did not determine whether any evidence withheld by the BTAs was, in fact, privileged or work product.

{¶ 13} Instead, on October 13, 2025, the trial court filed its decision sustaining Andrew's motion to compel discovery and overruling the BTAs' motion for a protective order. The trial court determined the BTAs had waived their right to assert any privileges by failing to timely assert the privileges in their discovery responses or provide a privilege log. The trial court also determined that the BTAs had waived their right to a protective order by failing to file it in a timely manner. This appeal followed on November 6, 2025.

---

1. The original judge assigned to Case No. 2023 CV 2052 retired in December 2024, and at the time of the motion to compel and opposition filings, a visiting judge was sitting by assignment. Case No. 2025 CV 716 had been assigned to another judge. In May 2025, the two cases were consolidated before the visiting judge. On July 30, 2025, the retired judge's replacement was appointed by Governor Mike DeWine, and the newly appointed judge took over the consolidated cases.

**{¶ 14}** On December 15, 2025, we issued an order that limited the scope of this appeal.[2] The sole question before us is whether the trial court's October 13, 2025 decision sustaining the motion to compel discovery and overruling the motion for a protective order requires disclosure of privileged material.

**{¶ 15}** The BTAs raise three assignments of error:

1. The trial court abused its discretion in failing to grant appellants' motion to stay discovery/motion for protective order.

2. The trial court erred in granting appellee's motion to compel and holding that appellants waived attorney-client privilege and work product.

3. The trial court erred in making findings of fact and ordering the production of attorney-client privilege and work product documents without conducting an evidentiary hearing or an in camera inspection.

## II. Attorney / Client Privilege and Work Product

**{¶ 16}** "'The attorney-client privilege is one of the oldest recognized privileges for confidential communications.'" *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 19, quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *Id*. at ¶ 18. "'Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice

---

2. The BTAs also appealed the order of the trial court that overruled their motion to dismiss. However, that decision is not a final appealable order, so we do not have jurisdiction to consider the decision.

or advocacy depends upon the lawyer's being fully informed by the client.'" *Id*. at ¶ 20, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

{¶ 17} The pertinent part of R.C. 2317.02 provides that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client." R.C. 2317.02(A)(1). The statute contains only two exceptions to the testimonial privilege. *Id*. Those are when the client gives express consent or, if the client is deceased, by the express consent of the surviving spouse, or the executor or administrator of the estate of the deceased client. *Id*.

{¶ 18} While the statutory privilege provides a testimonial privilege, the common law attorney-client privilege "protects against any dissemination of information obtained in the confidential relationship." *American Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 348 (1991). The attorney-client privilege also applies to discovery and protects against attempts to obtain documents or other information. *Eddy v. Farmers Property Cas. Ins. Co.*, 2026-Ohio-626, ¶ 28.

{¶ 19} Only a client can waive the attorney-client privilege, and R.C. 2317.02(A) provides the exclusive means by which privileged communications can be waived. *Jackson v. Greger*, 2006-Ohio-4968, paragraph one of the syllabus. The attorney-client privilege may not be the subject of a judicially created waiver. *Id*.; *State v. McDermott*, 72 Ohio St.3d 570 (1995); *Anton v. Flauto*, 2024-Ohio-4788, ¶ 19 (8th Dist.) ("'An attorney cannot waive the attorney-client privilege on his client's behalf.'"), quoting *Teodecki v. Litchfield Twp.*, 2015-Ohio-2309, ¶ 48

{¶ 20} "The work-product doctrine encompasses materials prepared in anticipation of litigation or for trial, and allows for the discovery of work product 'only upon a showing of good cause therefor.'" *Sutton v. Stevens Painton Corp.*, 2011-Ohio-841, ¶ 26 (8th Dist.),

quoting former Civ.R. 26(B)(3) (effective July 1, 2008). "'[A]ttorney work product, including but not limited to mental impressions, theories, and legal conclusions, may be discovered upon a showing of good cause if it is directly at issue in the case, the need for the information is compelling, and the evidence cannot be obtained elsewhere.'" (Brackets added in *Sutton*.) *Id.*, quoting *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 60.

{¶ 21} It is with these important principles of law in mind that we turn to the BTAs' assignments of error and the trial court's decision, which granted Andrew's motion to compel without any limitations while at the same time applying the Rules of Civil Procedure and deeming all privileges waived.

### III. Discussion

{¶ 22} Discovery orders are generally reviewed under an abuse of discretion standard. *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 13, citing *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 2006-Ohio-4574, ¶ 9. This standard also applies to the review of a ruling on a motion to compel. *Cochran Ohio LLC v. Washington*, 2023-Ohio-2212, ¶ 13 (2d Dist.). However, whether the information sought is confidential and privileged from disclosure is a question of law subject to de novo review. *Id.*

{¶ 23} We do not have any discovery materials before us to review to determine whether the discovery ordered to be produced by the trial court consists of protected attorney-client matter or work product material. Without the documents, we cannot evaluate the BTAs' privilege claims and therefore express an opinion about the ultimate protection and production of the information and documents.

{¶ 24} However, for purposes of this appeal, we assume the BTAs' assertions of privilege are true and conclude that the trial court's decision to grant Andrew's motion to

10

compel would require the BTAs to turn over attorney-client privileged materials and work product. The trial court's decision to deem that the BTAs had waived their privileges necessarily created a discovery order so broad in scope that it encompassed all attorney-client privileged materials and work product. Because the trial court determined that the BTAs had waived all privileges, we apply an abuse of discretion standard to review this aspect of the trial court's decision granting Andrew's motion to compel. As we explain below, we conclude that the trial court abused its discretion.

### A. The Privilege Log

**{¶ 25}** The trial court's decision determined that the BTAs had failed to timely and effectively assert their privileges by failing, in part, to provide a privilege log. The trial court correctly cited Civ.R. 26(B)(8)(a), which provides that "[w]hen information subject to discovery is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8)(a). Although a privilege log is common practice, the Supreme Court of Ohio has recently stated that "[a privilege] log is not always necessary to establish privilege." *Stull v. Summa Health Sys.*, 2024-Ohio-5718, ¶ 25, citing *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 383 (1998) ("respondents were not required to submit a 'privilege log' in order to preserve their claimed [attorney-client privilege] exemptions"), and 2023 Staff Note, Civ.R. 26 (asserting a privilege under Civ.R. 26(B)(8) often "entails preparation of a privilege log, but that may prove burdensome and expensive").

11

**{¶ 26}** The Supreme Court of Ohio has further noted that Civ.R. 26(B)(8)(a) is substantially similar to Fed.R.Civ.P. 26, and a committee note to the federal rule indicates that

> the best way to sufficiently describe allegedly privileged materials will depend on the context:

> > The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.

*Id*. at ¶ 24, quoting Committee Note to Fed.R.Civ.P. 26, 146 F.R.D. 401, 639.

**{¶ 27}** We therefore conclude that the trial court's reliance, in part, on the absence of a privilege log to determine that the BTAs had waived all privileges was improper.

### B. Strict Assert It or Lose It "Per Se" Rule

**{¶ 28}** In determining that the BTAs had waived all privileges, the trial court applied a strict construction of Civ.R. 26(B)(8)(a), 33, and 34. The trial court's application of the rules effectively requires a party to assert repeatedly, in multiple forms, their privileges and to request a protective order within 28 days, or else they will be deemed to have waived the right to assert privileges or to file for a protective order. Considering the procedural posture of this case, we reject such a strict approach.

**{¶ 29}** The Rules of Civil Procedure are to be "construed and applied to effect just results." Civ.R. 1(B). A just result is not achieved when a trial court deems a party to have

12

waived their right to assert all privileges if that party fails to assert a privilege in response to one form of a discovery request while it raises it in a different form of a discovery request after filing a motion to stay discovery to protect their privileges.

**{¶ 30}** The Supreme Court of Ohio recently rejected the application by a trial court and appellate court of an assert-it-or-forfeit-it-forever approach regarding the waiver of a privilege. The Court explained:

The trial court and the appellate court both cited *Bansal* [v. *Mount Carmel Health Systems, Inc.*], 2009-Ohio-6845 (10th Dist.), to indicate that Summa had one of two methods to establish that Dr. Elashi's residency file was protected by the peer-review privilege: (1) submit the residency file for the trial court to review in camera or (2) provide adequate information in an affidavit to establish that the privilege attaches. *See* 2022-Ohio-457, 185 N.E.3d 141 at ¶ 6 (9th Dist.); Summit C.P. No. CV-2019-06-2259, 2021 WL 1550519, at *4. Both courts assumed that if a party opts to submit an affidavit, and if the affidavit is lacking in any way, the party forfeits the privilege claim and must disclose the disputed material. *See* 2022-Ohio-457, 185 N.E.3d 141 at ¶ 6 (9th Dist.); Summit C.P. No. CV-2019-06-2259, 2021 WL 1550519, at *4. The appellate court further indicated that the ambiguities in Dr. Laipply's affidavit required the conclusion that the peer-review privilege did not apply, because "privileges must be strictly construed." 2022-Ohio-457, 185 N.E.3d 141 at ¶ 16 (9th Dist.). We hold that neither *Bansal* nor the strict construction of the peer-review privilege supported the trial court's decision to order Summa to disclose Dr. Elashi's residency file.

13

. . . [T]he appellate court focused on the fact that certain details in the affidavit were "not explained" or were "unclear," 2022-Ohio-457, 185 N.E.3d 141 at ¶ 14-15 (9th Dist.). A lack of clarity in this context relates to the standard that a claim of privilege "shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim," Civ.R. 26(B)(8)(a). The clarity requirement does not heighten Summa's evidentiary burden under the Civil Rules or force Summa into an all-or-nothing gamble.

(Footnote omitted.) *Stull*, 2024-Ohio-5718, at ¶ 27, 28.

**{¶ 31}** The Eighth District Court of Appeals has also declined to adopt a strict per se waiver rule. *Huntington Natl. Bank v. Dixon*, 2010-Ohio-4668, ¶ 24 (8th Dist.). In *Dixon*, the court explained:

"'Failure to assert the privilege objection correctly can mean that the privilege is waived.' Given that such a result 'could impose substantial and unjustified burdens on litigants,' however, most decisions regarding waiver due to failure to provide an adequate privilege log tend to be very case-specific. While some courts have held the failure to provide a privilege log within the applicable time to constitute a waiver of the asserted privilege, other courts have specifically 'reject[ed] a per se waiver rule that deems a privilege waived if a privilege log is not produced.' Indeed, in light of 'the harshness of a waiver sanction,' many courts 'have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery.' Additionally, '[m]inor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver.'"

14

(Internal citations omitted in *Dixon*.) *Id*. at ¶ 24, quoting *Berryman v. Supervalu Holdings, Inc.*, 2008 WL 4934007, *10 (S.D.Ohio Nov. 18, 2008).

{¶ 32} Our review of the BTAs' actions leads us to conclude that the BTAs' procedural violations were minor, and the circumstances militate against finding waiver. Here, the BTAs filed a motion to stay discovery eight days before Andrew sent his first request for interrogatories, admissions, and production of documents. Though the motion to stay was not technically captioned as a motion for a protective order, motions for protective orders encompass, in part, relief from discovery compliance. Civ.R. 26(C) ("Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party . . . , including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions . . . (4) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters"). The BTAs indicated in their motion to stay that the adversarial parties disagreed regarding the scope of discovery and had disputes over the attorney-client privilege and work product doctrine.

{¶ 33} The trial court failed to consider that the April 9, 2025 motion to stay discovery was tantamount to a motion for a protective order, given that the relief sought was to stay discovery. Under Civ.R. 37(D)(2), the BTAs' failure to fully respond to the interrogatories or document requests was excused pending their motion. *See* Civ.R. 37(D)(2) ("A failure described in Civ.R. 37(D)(1)(a) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Civ.R. 26(C).").

{¶ 34} The BTAs filed a motion to stay discovery before being served with formal requests, timely responded to Andrew's admissions by asserting attorney-client privilege

15

and work product, and, in July 2025, filed two additional motions for protective orders seeking to stay discovery. The BTAs' efforts, in our view, are sufficient to assert the attorney-client and work product privileges and do not warrant the trial court's harsh ruling, which deemed that they had waived all privileges under the circumstances.

{¶ 35} We stress that trial courts have a duty to protect a party's confidential and privileged information even if a party engages in some misconduct during the discovery process. *Bennett v. Martin*, 2009-Ohio-6195, ¶ 47 (10th Dist.). While the BTAs simply asserted privileges in response to one form of discovery (the admissions) and not to the other two forms of discovery (interrogatories and production of documents), their failure to state in writing "objection attorney-client privilege and work product" to the interrogatories and production of documents did not warrant the strict per se privilege waiver ruling of the court.

{¶ 36} We agree with the general rule that "application of a privilege is not automatic." *Chuparkoff v. Farmers Ins. of Columbus, Inc.*, 2004-Ohio-7185, ¶ 9 (9th Dist.), citing *McPherson v. Goodyear Tire & Rubber Co.*, 146 Ohio App.3d 441, 444 (9th Dist. 2001). However, to the extent that the trial court applied the rule to the facts of this matter and that Andrew requests that we follow these cases and affirm the trial court's decision to compel documents that are asserted to be attorney-client privileged and work product material, we decline to do so.

## C. Waiver of Privileges May Not Be Imposed As Discovery Sanction

{¶ 37} While not expressly stated in its decision, the trial court's determination of waiver imposes a discovery sanction. However, ordering the production of privileged documents as a discovery sanction is reversable error and an abuse of discretion. *Bautista v. Kettering Health*, 2025-Ohio-674, ¶ 14 (2d Dist.) ("Although trial courts have considerable

16

latitude in crafting sanctions for discovery violations (*see* Civ.R. 37), that discretion is not unlimited and would exclude measures such as ordering the production of privileged documents."), citing *Beck v. First Fin. Ins. Co.*, 2006-Ohio-3463 (12th Dist.) (holding that the trial court erred by ordering the waiver of attorney-client privilege as a sanction for discovery violations), and *Bennett v. Martin*, 2009-Ohio-6195, ¶ 47 (10th Dist.) (even when misconduct occurs in discovery, the court must protect the defendant's privileged information). Deeming privilege claims waived is not one of the enumerated sanctions available or listed in Civ.R. 37(B)(1)(a) through (f). Civ.R. 37(D)(3) ("Sanctions may include any of the orders listed in Civ.R. 37(B)(1)(a) through (f).").

### D. In Camera Review

**{¶ 38}** Another troubling aspect of the trial court's decision is that it did not conduct an in camera inspection regarding the BTAs' assertions of attorney-client privilege or work product. In this regard, the trial court limited its own discretionary powers. The Supreme Court of Ohio has stated

> that "[i]n managing the progression of a case, a trial court has inherent
> authority to use in camera review as a tool to resolve discovery disputes."
> *Daher v. Cuyahoga Community College Dist.*, 155 Ohio St.3d 271, 2018-Ohio-
> 4462, 120 N.E.3d 830, ¶ 12, citing *State ex rel. Grandview Hosp. & Med. Ctr.*
> *v. Gorman*, 51 Ohio St.3d 94, 95, 554 N.E.2d 1297 (1990). When a privilege
> issue is complicated or unclear, "[a]n *in camera* inspection is only a minimal
> first step" in resolving the issue of privilege. *Gorman* at 96, 554 N.E.2d 1297.
> A trial court can take the step of in camera review, and any other step allowed
> by the Civil Rules, given its inherent power to control discovery in general. *See*
> *id*. at 95, 554 N.E.2d 1297; *State ex rel. Abner v. Elliott*, 85 Ohio St.3d 11,

1999-Ohio-199, 706 N.E.2d 765, ¶ 16 (trial courts have "extensive jurisdiction over discovery, including inherent authority to direct an *in camera* inspection of alleged privileged materials").

*Stull*, 2024-Ohio-5718, at ¶ 31.

**{¶ 39}** The trial court should have exercised its inherent authority and conducted an in camera review regardless of whether the BTAs requested it by motion. Because the trial court did not conduct an in camera review of materials asserted to be privileged, it did not determine whether the discovery was in fact privileged and/or work product before it granted Andrew's motion to compel. We conclude that the trial court abused its discretion when it granted the motion to compel privileged information without conducting an in camera review. *12312 Mayfield Road, LLC v. High & Low Little Italy, LLC*, 2024-Ohio-2717 (8th Dist.) (trial court abused its discretion when it granted High & Low's motion to compel documents and declined to conduct an evidentiary hearing or in camera review of the disputed documents); *See also Matter of Hasenfratz*, 2025-Ohio-2372 (6th Dist.) (same); *Bautista*, 2025-Ohio-674 (2d Dist.) (trial court erred in ordering the production of confidential files without determining if they are privileged); *Cochran Ohio*, 2023-Ohio-2212 (2d Dist.).

### E. Conclusions Without Evidence or Hearing

**{¶ 40}** A final troubling aspect of the trial court's decision is that it made conclusions of law and fact; however, the court did not hold an evidentiary hearing. The only materials before the trial court were the pleadings and motions of the parties.

**{¶ 41}** The trial court did not have evidence before it to determine the scope of Stachler's communications regarding any client, including which communications involving the trust, its creation, and/or the BTAs were protected. Therefore, the court was without evidence to conclude that, "[d]espite his dubious implications to the contrary, this Court finds

18

that Stachler was not acting in the capacity of an attorney representing the Trust at the time the Trust engaged in machinations to exert control over RB Jergens and 309 Holdings."

{¶ 42} Additionally, the trial court's statements in its decision as to the exclusion of the attorney-client privilege due to the possible commission of a crime or tort is premature. Whether the crime-fraud exception to the attorney-client privilege applies is a factual inquiry that must be determined on evidence and proven by the party seeking to invoke the exception. "A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud. The mere fact that communications may be related to a crime is insufficient to overcome the attorney-client privilege." (Citation omitted.) *Nix*, 83 Ohio St.3d at 383-384. Given the lack of evidence before the trial court, its findings and conclusions were clearly erroneous, and as they related to the trial court's determination that the BTAs had waived their privileges, the court abused its discretion.

{¶ 43} The BTAs' assignments of error are well-taken and are sustained.

## IV. Conclusion

{¶ 44} The judgment of the Montgomery County Common Pleas Court is reversed, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.